## PATTON v. BROWN-MOORE LUMBER COMPANY.

Opinion delivered March 28, 1927.

1. MONEY RECEIVED—IMPLIED PROMISE.—An action on an implied promise is maintainable where one person has received money or its equivalent, which, in equity and good conscience, he ought not to retain, although there is no privity between the parties, and whether the money was received from the plaintiff or from a third person.

2. LOGS AND LOGGING—RIGHT TO RECOVER FOR TIMBER CUT.—Where the owners of land sold to a lumber company timber owned by them and received payment for less than the amount of their own timber which was cut, held that they were under no obligation to pay for timber cut from the land of another by the lumber company.

Appeal from Conway Chancery Court; *Hugh Basham,* Chancellor; affirmed.

*J. F. Koone,* for appellant.

*Strait & Strait,* for appellee.

MEHAFFY, J.   The appellant, plaintiff below, filed a complaint in the Conway Chancery Court which, omitting the caption, is as follows:

"The said plaintiff is, and has been in all times hereinafter mentioned, the owner in fee of the north half of the northeast quarter and the northeast quarter of the northwest quarter of section 33, township 10 north, range 16 west, in Van Buren County, Arkansas, together with all timber of whatsoever kind standing and growing thereon.

"During the year 1921 the Groblebe Lumber Company, a nonresident corporation, and the said Brown-Moore Lumber Company, a corporation organized and existing under and by virtue of the laws of the State of Arkansas, as agents of the said Q. A. Morgan, W. W. Barrett and E. R. Barrett, with their knowledge and consent, and without the knowledge or consent of plaintiff, wrongfully cut and removed from said lands 500,000 feet of pine timber of the value of $2,500; and said timber has been removed by said corporations beyond the reach of said plaintiff.

"The defendants, Q. A. Morgan, W. W. Barrett and E. R. Barrett, are nonresidents of the State of Arkansas, and have received and not accounted to plaintiff for the sum of $2,500 as the purchase price of said timber, said sum having been paid to said defendants jointly by said corporations as agents aforesaid.

"Said corporations are insolvent, not owning sufficient property subject to execution to satisfy the claim of the plaintiff; and the said Brown-Moore Lumber Company is a reorganization and continuation of the said Groblebe Lumber Company.

"Wherefore, plaintiff prays that the court declare that the said Q. A. Morgan, W. W. Barrett and E. R. Barrett are indebted jointly to plaintiff in the sum of $2,500; that the property held under attachment herein be ordered sold and the proceeds of said sale be declared a trust fund for the benefit of plaintiff and applied in satisfaction of his claim; and that he have all other and further equitable relief."

Q. A. Morgan, W. W. Barrett and E. R. Barrett filed the following answer:

"Come the defendants, Q. A. Morgan, W. W. Barrett and E. R. Barrett, and, for their separate answer to the complaint of the plaintiff filed herein as to them, say:

"That they have no knowledge or information upon which to base a belief and therefore cannot say whether or not the plaintiff is the owner in fee of all or any part of the lands so alleged and described in this complaint, and has no knowledge or information and therefore cannot say whether or not the Groblebe Lumber Company or the Brown-Moore Lumber Company cut, took or removed from said lands 500,000 feet of pine timber of the value of $2,500, or any other amount of timber or any other value, or that said timber was removed beyond the reach of said plaintiff, but deny that, if either the Groblebe Lumber Company or the Brown-Moore Lumber Company cut or removed any of said timber, same was done as the agent of Q. A. Morgan, W. W. Barrett, E. R. Barrett, or with their knowledge or consent. And

deny that they or either of them have any connection with it or received anything for said timber or had any knowledge that same had been cut, and deny that either the Groblebe Lumber Company or the Brown-Moore Lumber Company had any authority for them to cut or remove said timber.

"Wherefore, defendants having answered as to them, pray that plaintiffs' complaint be dismissed for the want of equity, and for all other proper relief."

There was no dispute about S. K. Patton owning the tract of land from which he claimed the defendants had taken the timber. The plaintiff waived his right to any judgment against the Brown-Moore Lumber Company and the Groblebe Lumber Company, and the case as to them was dismissed.

The testimony showed that Morgan and W. W. and E. R. Barrett sold their timber to the Groblebe Lumber Company for $100,000, and that said lumber company was indebted to Morgan and the Barretts, in January, 1922, in the sum of $35,000; that Morgan, who was at one time stockholder in one of the companies which was now insolvent, heard, some time in 1920, of a discrepancy in the description of the land, and wrote to the lumber company. The Brown-Moore Company purchased the interest of the other corporations and, after all the timber had been cut by the two companies, Morgan was informed by Patton that he owned one tract of the land and Morgan wrote to the corporations advising them of this fact. He also wrote Barrett that Patton claimed the land.

About one-half of all the timber taken from section 33 was taken from the land owned by Patton. Testimony also showed that, in the suit of Morgan and others against the Brown-Moore Lumber Company, the suit was for the entire amount of timber cut by both companies; that Morgan and the Barretts sold the timber in Van Buren and Conway counties to the lumber company and furnished it a blue-print. The blue-print showed Patton's a part of that to be cut. Morgan and the Barretts

owned about 8,000 acres.   The reports of the cutting made to Morgan and the Barretts did not particularly describe the 120 acres belonging to Patton.   Morgan and the Barretts owned section 33, except the 120 acres of Patton.   Morgan and the Barretts were informed that Patton's timber had been cut before their suit against the Brown-Moore Lumber Company, but not until after the timber had been cut and removed.

An accounting was made to Morgan and the Barretts of the Patton timber just as other timber was accounted for.   It was thought to be the property of Morgan and the Barretts until after it was cut and removed.   The contract provided for the lumber company to pay one-fourth of the amount of timber on any section when they began cutting, at the rate of $5 a thousand for the estimated amount.   Parts of section 33 which did not belong to Morgan and the Barretts were included in the cruises furnished by Morgan and the Barretts.   The contract of the lumber companies with Morgan and the Barretts referred to the deed for a description of the lands on which the timber was located.   Morgan, W. W. and E. R. Barrett were tenants in common and owned a large tract of land which they contracted to sell to the lumber company.   The company made payments under the amounts due under the contract in the total sum of about $40,000.   The lumber company at first made reports when it started to cut, but later discontinued to make reports, but the reports only showed that it would start cutting upon a certain section, without showing or indicating what part of the section.   They had land in sections where they did not own the whole section, and it was impossible to tell from the reports what part of the section they were cutting on.   The lumber companies made payments to Morgan and the Barretts.

It appeared that, after the litigation began, the payments made were according to estimate on 520 acres when Morgan and the Barretts only owned 400 acres in that section.   They simply accepted the payments that

were made by the lumber companies. The lumber companies never had authority from Morgan or the Barretts to cut timber on any lands not included in the description of the deeds, which were recorded and referred to in the contract. The sale of the timber was set at the price of $100,000 and $5 a thousand feet mentioned to be paid when they began cutting, but, if they had paid $5 for all of it, it would have amounted to $180,000 instead of $100,000, which was the contract price for the timber.

The appellees said: ''The first payment was made to us for the privilege of cutting on section 33, and this was before any timber was cut. We did not know until after this litigation came up that any timber had been cut on the 120 acres belonging to Patton.''

The appellees learned this after the litigation began. If the payments came from timber cut on section 33, it would only be 50 per cent. of the estimated timber on 520 acres, and Morgan and the Barretts owned 400 acres. The lumber companies are still indebted to Morgan and the Barretts in the sum of more than $30,000, mostly for timber cut from sections that had not been reported to them. Groblebe wrote to one of the appellees that the cruise furnished and the abstract were not the same, and requested a careful check. Barrett wrote the lumber company, after checking carefully the land, directing its attention to the fact that Morgan and the Barretts only owned 400 acres in section 33. They again wrote to the lumber company that they did not convey it all the lands covered by the blue-print and cruise and offered to accept payment on section 33 as a basis of an average of the timber on the amount of land owned by appellees in said section. The only description ever furnished the lumber companies was referred to in the recorded deeds and the abstract furnished said company. They did not sell or attempt to sell the lumber companies the land owned by appellant, and no authority was given the companies to take timber from the lands owned by Patton. The appellees never received the full number of payments for the right to cut the timber on section 33.

The appellant seeks to recover in this case on an implied promise to pay. There is no contention that there was an express promise, and, on the other hand, there is no contention or dispute about appellant's owning the land. So that really the only question in the case is whether the appellees are liable under an implied promise. Appellant cites many authorities to the effect that, when one has in his possession money belonging to another, an action may be maintained against the person who has the money, and that an express promise is unnecessary. The action is not dependent upon an express promise, and, as many authorities say, not even upon one implied in fact, but it is maintainable in all cases where one person has received money or its equivalent under such circumstances that, in equity and good conscience, he ought not to retain it, and, *ex aequo et bono,* it belongs to another. And it is said that this is so, irrespective of whether the money was received from the plaintiff or from a third person. 2 R. C. L. 778.

The authorities are practically unanimous in holding that, if one has money belonging to another, which, in equity and good conscience, he ought not to retain, it may be recovered, although there was no privity and no express contract or agreement. Under such circumstances the law implies a promise to pay, and if the appellees in this case had received money from the corporations that belonged to the appellant, which, in good conscience, they ought not to retain, plaintiff would be entitled to recover. But we do not think that the proof in this case justifies a finding or conclusion that appellees have any money belonging to appellant under such circumstances as the law requires in order to make them liable.

The appellees entered into a contract with the corporations on May 28, 1919, by which they sold the Groblebe Lumber Company certain timber. It is true that a blueprint was furnished which showed appellant's land as well as appellees'. But there was also an abstract and deed furnished, and this record shows that the abstract

was an abstract of appellees' lands, and there is no suggestion even that it included appellant's land. Moreover, the contract itself provided "timber upon said lands owned by said first parties situated in Conway and Van Buren counties, Arkansas, and completely described in a certain deed executed by Lloyd England of Little Rock, Arkansas, in favor of Q. A. Morgan and now recorded in the said counties of Conway and Van Buren, Arkansas, and conveyed approximately 8,300 acres of land."

It is perfectly clear that the appellees did not intend to sell any timber except what they owned and what was described in the deed to which the contract referred. The undisputed proof shows that appellees did not know that any timber had been cut on appellant's land until after the litigation began. The undisputed proof also shows that the corporations are still indebted to the appellees for timber in a sum very much larger than appellants claim, and there is no proof in the record showing that appellees received any money for appellant's timber. In fact, they did not receive pay for all of their own timber. Therefore it cannot be said that appellees had in their possession money which, *ex aequo et bono,* belonged and ought to have been returned to appellant, as was shown in the case of *Porter* v. *Roseman,* 165 Ind. 255, 74 N. E. 1105, 112 Am. St. 222, 6 Ann. Cas. 718.

Our own court has held that, in order to maintain a suit of this kind, the plaintiff must prove that the defendant actually received the money, and this, we think, he failed to do, and a promise to pay is never implied where it would be unjust to the party to whom it would be imputed, and such promise will be implied only where, in equity and good conscience, the duty to make such promise exists. That is, the law implies a promise only when, under the circumstances and proof, it would be the duty of the defendant to make such a promise. We do not think the proof in this case justifies the conclusion that there was any implied promise to pay. The decree of the chancellor is affirmed.