Nola Hickingbottom COX *v.* WOOTEN BROTHERS
FARMS, INC.

CA 80-348                                601 S.W. 2d 278

Court of Appeals of Arkansas
Opinion delivered January 21, 1981

*W. G. Dinning, Jr.*, for appellant.

*Daggett, Daggett & Van Dover*, by: *W. H. Daggett*, for appellee.

TOM GLAZE, Judge. The appellant, Cox, appeals an adverse chancery court decision and argues one issue for reversal. The sole issue to be decided is whether the trial court erred in applying the equitable doctrine of subrogation so as to entitle the appellee, Wooten, to the rights of the Federal Land Bank of St. Louis on its note and mortgage executed by Cox and other named heirs who acquired an interest in certain property under a family settlement agreement. Whether or not the trial court correctly applied the doctrine directly depends upon the facts before the court and the facts are not in dispute.

On February 27, 1967, Clinton Hickingbottom, Nola Hickingbottom, his wife (now Cox, appellant), and Jerry Hickingbottom, Mildred Hickingbottom, Shirley Baker and Jane Dare (all children of Clinton Hickingbottom by a former marriage) executed a promissory note and mortgage to the Federal Land Bank of St. Louis in the sum of $89,475. Clinton Hickingbottom owned land situated in Phillips County which secured the promissory note. Clinton Hickingbottom died, and after his death the widow, Cox, and the heirs, the deceased's four children, entered into a family agreement. The agreement limited each family member's liability on the Federal Land Bank note. First, 100 acres of the encumbered land was assigned to Cox as her dower interest, and the remaining 267 acres were assigned to the heirs. By this same agreement, the note payment to Federal Land Bank was prorated between Cox and the heirs so that each was to pay their share when the note payment came due. This agreement became a part of a probate court order.

Sometime after the family agreement, Hickingbottom's heirs (children) agreed to sell their assigned property to Wooten. Wooten agreed, among other things, to assume the heirs' total obligation on the note to the Federal Land Bank. Wooten received credit on the purchase price paid in the amount the heirs were to pay on the note, i.e, 71.2% of the

entire debt. Wooten also required the heirs to give it a mortgage on their remainder interest in the lands assigned to Cox in case Wooten was ever called upon to pay her pro rata share (28.2%) of the debt owed on the Federal Land Bank loan.

All went well for four years until Wooten found it necessary to refinance its operation and obtain an additional loan from the Federal Land Bank. Before Wooten could be approved for additional funds, Wooten was required to pay off the entire mortgage indebtedness, including the pro rata obligation of Cox. Cox was unaware that Wooten had paid the entire Federal Land Bank note until she was advised that the pro rata payments she had continued to pay were being placed in Wooten's account and not on the Federal Land Bank note. Cox then refused to make her 1980 payment and any further payments, contending Wooten was a volunteer when it liquidated the Bank note, and she no longer was obligated to pay Wooten or the Federal Land Bank. Wooten filed action against Cox in lower court seeking the 1980 payment which was past due and an order compelling her to make all further payments to Wooten on her pro rata share of the original debt to the bank. The trial court granted Wooten the relief it sought and it is this adverse decision from which Cox appeals.

Our Supreme Court has considered the doctrine of subrogation and its application on many occasions and most of the relevant Arkansas cases are set forth in the parties' briefs. The doctrine is no better set forth and explained than in the case of *Baker, Adm'r* v. *Leigh*, 238 Ark. 918, 385 S.W. 2d 790 (1965) wherein the Court, citing *Southern Cotton Oil Company* v. *Napoleon Hill Company*, 108 Ark. 555, 158 S.W. 1082 (1913), adopted the following discussion and guidelines in determining when subrogation should be applied:

> The doctrine of subrogation is an equitable one, having for its basis the doing of complete and perfect justice between the parties without regard to form, and its purpose and object is the prevention of injustice. Cyc. also says, 'And generally, where it is equitable that a person, not a mere stranger, intermeddler, or volunteer, furnish-

ing money to pay a debt, should be substituted for or in place of the creditor, such person will be so substituted.'

\* \* \*

'It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice and good conscience demand its application in opposition to the technical rules of law, which liberate securities with the extinguishment of the original debt. *This equity arises when one not primarily bound to pay a debt, or remove an incumbrance, nevertheless does so; either from his legal obligation, as in case of a surety, or to protect his own secondary right; or upon the request of the original debtor, and upon the faith that, as against the debtor, the person paying will have the same sureties for reimbursement as the creditor had for payment.* And this equity need not rest upon any formal contract or written instrument. Like the vendor's lien for purchase money, it is a creation of a court of equity from the circumstances.' The theory of equitable assignment, as laid down by Pomeroy is: 'In general, when any person having a subsequent interest in the premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor, primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit; he is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection. The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his own benefit; such a person is in no true sense a mere stranger and volunteer.' [Citations omitted and emphasis supplied.]

From a review of the record and undisputed facts of the case at bar, we can conceive of no more appropriate set of facts and circumstances to which the equitable doctrine of subrogation should apply. Of course, Wooten was not originally and primarily indebted to the Federal Land Bank;

Cox and the four children (the heirs) were. Cox continued to be obligated to the Bank even after Wooten purchased the heirs' land and assumed the debt in question. It was not until Wooten was compelled to pay the entire note by the Federal Land Bank when Cox decided she was no longer indebted to anyone, the Bank of Wooten. Wooten was protecting a legitimate interest when it paid the entire debt to the bank, and Cox should not be permitted to be unjustly enriched merely because Wooten was required to pay off a loan for which both Wooten *and* Cox had an obligation to pay. It is difficult to perceive how Wooten can be called a volunteer under the circumstances described when it purchased land that is a part of the Hickingbottom family agreement, and in doing so also assumed a note obligation to the Federal Land Bank albeit to be paid apart but in conjunction with Cox, who had a continuing pro rata responsibility on the same note.

Cox relies heavily on the case of *Moon Realty Company, Inc. v. Arkansas Real Estate Company, Inc.*, 262 Ark. 703, 560 S.W. 2d 800 (1978) which she claims is controlling of the facts herein. We disagree. The *Moon* case involved two tax defaulting property owners, Rose Courts and Arkansas Warehouse Corporation. The United States obtained a tax lien on the property owned by the Rose Courts and the Warehouse Corporation. This property was purchased by Moon Realty Company at a foreclosure sale, but the sale was subject to a United States tax lien. Before the government would release its lien interest in the defaulting owner's property, it required that Moon pay not only the taxes owed by three other parties, Arkansas Real Estate Corporation, Robert and Mary Traylor. These last three named parties had no interest in the foreclosure action or in the property owned by Rose Courts and the Warehouse Corporation. Unlike Cox in the case at hand, the Traylors and Arkansas Real Estate Corporation were truly strangers and the court did not apply the doctrine of subrogation to permit Moon to recoup the tax payment Moon made for the Traylors and the Arkansas Real Estate Corporation. The court did, however, find Moon was entitled to subrogation rights against Rose Courts and the Warehouse Corporation.

After a careful review of the record, it is clear that Wooten was required to and in good faith did liquidate the debt owing to the Federal Land Bank, including Cox's pro rata share. We further hold that Wooten was in no sense of the word a volunteer, and therefore, Wooten is entitled to equitable subrogation rights against the appellant, Cox.

Affirmed.

CRACRAFT, J., not participating.