Beatrice DOLPHIN *v.* Jimmie L. WILSON and
Henrietta J. Wilson

97-1391                                        983 S.W.2d 113

Supreme Court of Arkansas
Opinion delivered November 12, 1998

[Petition for rehearing denied December 17, 1998.]

*David Solomon*, for appellant.

*Wilson & Valley*, by: *E. Dion Wilson*, for appellees.

ROBERT L. BROWN, Justice. This is the second appeal we have had regarding the parties' dispute, which relates to an alleged oral contract for the sale of land. *See Dolphin v. Wilson*, 328 Ark. 1, 942 S.W.2d 815 (1997) (*Wilson I*). The facts surrounding the dispute are sufficiently laid out in *Wilson I*. In the first case, we reversed the trial court's decree and held as follows:

> When considering all the evidence, we conclude that the chancellor clearly erred in finding that there was clear and convincing evidence that an agreement existed between the parties. Under these circumstances, we hold that the Wilsons' complaint was barred by the statute of frauds, and reverse and *remand for entry of an order consistent with this opinion.*

*Wilson I*, 328 Ark. at 8, 942 S.W.2d at 819-820 (emphasis ours).

A mandate was subsequently issued by the Supreme Court Clerk after rehearing in the case had been denied, and that mandate read in pertinent part:

> It is therefore ordered and decreed by the Court that the decree of said Chancery Court in this cause rendered be, and the same is hereby reversed, annulled and set aside with costs and that this cause be remanded to said Chancery Court for further proceedings to be therein had according to the principles of equity and *consistent with the opinion herein delivered.* (Emphasis ours.)

When the case returned to the trial court on remand, appellees Jimmie L. Wilson and Henrietta J. Wilson filed a Motion For Refund of Funds Expended wherein they claimed that appellant Beatrice Dolphin was unjustly enriched in the amounts of $13,200, which they had paid to the Farmers Home Administration for the removal of liens on the farm land, and

$1,239.40, which they had paid to the United States Department of Justice for costs. They prayed that she be ordered to reimburse them in the amount of $14,439.40. Dolphin responded to the motion and asserted that the Wilsons had paid those amounts as volunteers, that the Supreme Court had decreed there was no contract that could be specifically performed, and that the trial court should enter an order placing into effect the Supreme Court mandate following *Wilson I*. The Wilsons replied that the expenses paid were for Dolphin's benefit and that Dolphin's response should be struck for lack of factual or legal support. Wilson then amended his reimbursement motion to claim relief under the equitable doctrine of *quantum meruit*.

Legal briefs accompanied the parties' motion and response, and the trial court entered its order, granting Wilson judgment in the amount of $14,239.40 under the theory of unjust enrichment. The trial court relied on *Townsend v. Arkansas Highway Commission*, 317 Ark. 581, 879 S.W.2d 447 (1994), in finding that it had jurisdiction to hear the Wilsons's motion. We quote the pertinent part of the trial court's order on jurisdiction:

> In *Arkansas State Highway Commission v. Townsend, Townsend I* 313 Ark. 702, (1993), the Arkansas Highway Commission petitioned this court for injunctive relief to have a structure removed from a right-of-way held by the Commission. This court denied the requested relief. The matter was appealed to the Arkansas Supreme Court, and the denial of injunctive relief was reversed and the case "dismissed" by the Arkansas Supreme Court. In a later proceeding filed in the same case, the Commission petitioned this court to grant it the injunctive relief that it had originally requested and felt itself entitled because of the reversal by the Arkansas Supreme Court. This court declined to act on the matter because the Arkansas Supreme Courts mandate reflected that the case had been dismissed. According to the law, as it was understood by this court at that time, a dismissal removed jurisdiction from the trial court to act for any purpose. The Supreme Court, on the second appeal of this case, *Townsend v. Arkansas Highway Commission*, 317 Ark. 581, (1994) Townsend II, held otherwise. To quote the Arkansas Supreme Court in that case:
>
> > "When the Arkansas State Highway Commission petitioned for an injunction subsequent to our original decision, the

> chancellor could have treated it as a new case rather than as continuation under the aegis of the original filing. Under those circumstances, she would have assumed jurisdiction independently of the mandate from this court in Townsend I.

317 Ark. at 585.

> Thus, although the opinion of this court would almost certainly have been different before the Arkansas Supreme Court's pronouncement in Townsend II, it is now of the opinion that it has the authority to render such further orders as may be necessary to fully effectuate the decision of the Arkansas Supreme Court. If this court has the authority to act where the case has been "dismissed" by the Arkansas Supreme Court, surely it may act where, as here, the case has been remanded. This court has the authority to grant such relief as may be required under the Arkansas Supreme Court's mandate to fully and finally resolve the matter. Therefore, since the relief requested by the plaintiffs is entirely consonant with, and in no way conflicts with, the Arkansas Supreme Court's ruling, this court finds that it has jurisdiction to treat this as "a new case" within the meaning of *Townsend II*.

The first issue raised by Dolphin on appeal is whether the trial court exceeded its authority in hearing and deciding the unjust-enrichment claim after our opinion in *Wilson I* had come down and the mandate had issued. We believe that it did.

It is instructive, initially, to turn once more to our decision in *Wilson I*. Our opinion in that case discussed the sole issue on appeal, which concerned the existence of an oral contract to sell farm land. An unjust-enrichment claim was not pled in Wilson I; nor was relief in the form of *quantum meruit* requested. Moreover, the Wilsons do not contend that the unjust-enrichment claim was tried by the express or implied consent of the parties during the first trial. *See* Ark. R. Civ. P. 15(b). Also, the Wilsons did not make a motion in the first trial to amend the pleadings to conform to the evidence. *Id.* Because of this, the trial court did not consider a claim for unjust enrichment or address it as part of the decree. This being the case, the issue before us today is whether the Wilsons can raise a new cause of action after the case on appeal

has been decided and when the opinion and mandate both require an order consistent with the opinion in *Wilson I.*

■ The history of the mandate rule was reviewed recently by the Third Circuit Court of Appeals. *See Casey v. Planned Parenthood*, 14 F.3d 848 (3d Cir. 1994). In *Casey*, the Third Circuit observed:

> Of these rules, the most compelling is the mandate rule. This fundamental rule binds every court to honor rulings in the case by superior courts. As the Supreme Court has stated, "In its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948).

*Casey*, 14 F.3d at 856. Quoting from *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985), the Third Circuit went on to underscore the deference a trial court must give to the mandate:

> A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

*Casey*, 14 F.3d at 857.

■ The *Casey* decision is in accord with the blackletter law on mandates which we garner from *American Jurisprudence. See* 5 Am. Jur. 2d *Appellate Review*, §§ 776-794 (1995). We take this opportunity to cite with approval a few of the major precepts regarding mandates:

> A "mandate" is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed.

5 Am. Jur. 2d, § 776.

> However, the lower court is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate. Therefore, the question of whether the lower court followed the mandate is not simply one of whether the lower court was cor-

rect in its construction of the case, but also involves a question of the lower court's jurisdiction.

5 AM. JUR. 2d, § 784.

If an appellate court remands with specific instructions, those instructions must be followed exactly, to ensure that the lower court's decision is in accord with that of the appellate court.

Where a remand limits the issues for determination, the court on remand is precluded from considering other issues, or new matters, affecting the cause. Thus, where the case is remanded for disposition of the remaining post-trial issues that were not addressed by the trial court, any issue the trial court had previously addressed may not be considered on remand. Similarly, when a case is remanded for a specific act, the entire case is not reopened, but rather the lower tribunal is only authorized to carry out the appellate court's mandate, and the trial court may be powerless to undertake any proceedings beyond those specified.

5 AM. JUR. 2d, § 787.

Any proceedings on remand which are contrary to the directions contained in the mandate from the appellate court may be considered null and void.

5 AM. JUR. 2d, § 791.

Two cases, in particular, have touched on this issue in Arkansas. *See Little Red River Levee Dist. No. 2 v. Moore*, 199 Ark. 946, 137 S.W.2d 234 (1940); *Felker v. McKee*, 154 Ark. 106, 241 S.W. 378 (1922). In *Felker*, we referred to a previous appeal in that case where we overruled the trial court's sustaining of a demurrer and reversed and remanded "with directions to overrule the demurrer, and for further proceedings to be therein had according to the principles of equity and not inconsistent with the opinion of the court." *Felker*, 154 Ark. at 105, 241 S.W. at 378. On remand, the appellant sought to offer proof on the market value of certain stock and payment. The trial court refused to allow additional proof and limited its consideration to the record originally made. We affirmed the trial court's ruling and said:

> Ample opportunity was given him to fully develop his case upon all issues presented by the pleadings. To construe a reversal and remand of a cause for further proceedings, which had been submitted originally upon the merits, to mean that appellant might further develop his cause would enable him to proceed in his case by piecemeal and try it over every time he secured a reversal *ad infinitum*.
>
> . . . .
>
> Had this been done, and had the court been of the opinion that appellant was entitled to further develop the case, specific directions to that effect would have been included in the mandate.

*Felker*, 154 Ark. at 106, 241 S.W. at 378-379.

In *Little Red River Levee Dist. No. 2 v. Moore, supra,* the facts were more akin to the facts in the instant case. There, we reversed the trial court, ordered specific performance of certain contracts, and remanded the case with directions to make payments on the land to effect that specific performance. On remand, a party filed an answer raising a prayer for reformation of the timber contract, which the trial court entertained. We reversed the trial court's decision to allow a new defense to be raised after remand and said:

> When it had been held that plaintiffs were entitled to the relief prayed under the contracts, which the demurrers confessed to be true, an answer was filed, after remand of the cause, in which it was alleged that the contracts, made exhibits to the complaint, did not express the true contract between the parties, and its reformation was prayed. The prayer to reform the contract comes too late. Litigation would be interminable if a party were allowed to present his defenses piecemeal, or, failing in one defense, to then interpose another. One way may not change his hold in this manner.

*Little Red River Levee Dist. No. 2,* 199 Ark. at 950, 137 S.W.2d at 236.

■ ■ Neither of these cases is on all fours with the facts in the instant case, but they stand for the proposition that either new proof or new defenses cannot be raised after remand when they are inconsistent with this court's first opinion and mandate. Indeed, to allow such to occur undermines the finality of this court's decision and denies closure on matters litigated. The same

principle applies to raising a new cause of action after appeal and the issuance of the mandate. It is indisputable that this court held in *Wilson I* that an order should be entered by the trial court *consistent with our opinion.* To go outside of that opinion, hear a new cause of action which had not been pled or tried, and then enter an order on the new cause of action cannot be said in any wise to be action which conforms with this court's holding.

Clearly, the trial court's first instincts in this appeal were to refrain from entertaining the unjust-enrichment claim. The trial court, however, relied on our opinion in *Arkansas State Highway Comm'n v. Townsend*, 317 Ark. 581, 879 S.W.2d 447 (1994) (*Townsend II*). In *Townsend II*, the issue was whether the trial court had authority to grant a petition for injunctive relief which was *consistent* with our opinion in *Townsend I* (*Arkansas State Highway Comm'n v. Townsend*, 313 Ark. 702, 858 S.W.2d 66 (1993)). In *Townsend I*, the Highway Department had filed a petition to enjoin Townsend from maintaining a gate, fence, and cabins on the Highway Department's right-of-way. The chancery court denied the petition. We reversed the chancery court and dismissed the matter. After this court's dismissal, the Highway Department sought an injunction in the trial court to enforce our opinion in *Townsend I*. The trial court first granted the injunction but then reversed itself and found it had no authority to grant injunctive relief because of the dismissal.

We again disagreed with the trial court in *Townsend II* and noted that the *Townsend I* mandate stated that the trial court had erred in denying the injunction "as set out in the opinion." *Townsend II*, 317 Ark. at 583, 879 S.W.2d at 448. We further stated that our language in *Townsend I* that the trial court was wrong in denying the Highway Department an injunction was very clear. We concluded in *Townsend II* on *de novo* review that the trial court could have assumed jurisdiction of the Highway Department's petition independently of the mandate and treated it as a new case. We affirmed the trial court's initial grant of the petition for injunctive relief.

That situation in *Townsend II*, of course, is categorically different from the case before us. There, injunctive relief granted

by the trial court to the Highway Department was entirely consistent with the intended result of our opinion in *Townsend I*. In the case at hand, the trial court's order, which entertained a new cause of action, went far beyond the mandate and was not an order which gave effect to our opinion in *Wilson I*.

■ The trial court, further, misconstrues our opinion and the mandate in *Wilson I*, when it says in the order: "This court has the authority to grant such relief as may be required under the Arkansas Supreme Court's mandate to fully and finally resolve the matter." That is incorrect. Directions by an appellate court to the trial court as expressed by the opinion and mandate must be followed exactly and placed into execution. Indeed, the jurisdiction of the trial court on remand is limited to those directions. The trial court's authority was circumscribed in this case, and the court was empowered only to enter an order consistent with this court's opinion. The trial court's order unquestionably exceeded those bounds.

■ We acknowledge that had this court remanded the matter for further proceedings without specific instructions as opposed to requiring the entry of an order conforming to our opinion, our holding might well be different. *See generally Remand — Change of Fact Findings*, 19 A.L.R. 3d 502-505 (1968). But that is not the situation. We reverse the trial court's order because it exceeded that court's jurisdiction following this court's opinion in *Wilson I* and the mandate, and we dismiss this case.

Reversed and dismissed.

Special Justice PAUL BYRD joins.

THORNTON, J., Special Justice KENT TESTER, and Special Justice JAMES ROY dissent.

NEWBERN, GLAZE, and CORBIN, JJ., not participating.

JAMES ROY, Special Justice, dissenting. The only issue to be determined by this Court is whether the Chancellor's decision in *Dolphin v. Wilson II* was consistent with the Supreme Court's mandate of May 12, 1997, in regard to *Dolphin v. Wilson I*. Appellant Dolphin argues that the Chancery Court had no

authority to act as it did in granting a judgment to appellee for unjust enrichment in light of this Court's opinion and mandate in the previous appeal of *Dolphin v. Wilson*, 328 Ark. 1, 940 S.W.2d 494 (1997). The Court there held that plaintiffs Henrietta and Jimmie Wilson had failed to come forward with *clear, cogent, and convincing evidence* that would take an oral contract for the sale of land out of the statute of frauds. Both the statute of frauds, ACA §4-59-101(a)(4), and the case law interpreting same require a quantum of proof to remove an oral contract from the statute of frauds to be clear, cogent, and convincing.

The mandate in *Dolphin I* provided:

> It is therefore ordered and decreed by the Court that the decree of said Chancery Court in this cause rendered be, and the same is hereby reversed, annulled and set aside with costs and that this cause be remanded to said Chancery Court for further proceedings to be therein had according to the principles of equity and *consistent with the opinion herein delivered.*

The mandate did three things: (1) it remanded the case to Chancery Court, it did not dismiss the case; (2) it directed the Chancellor to act in accordance with the principles of equity; and (3) it directed the Chancellor to act consistent with the opinion in *Dolphin I.*

Two questions must be answered. (1) Did the Chancellor act according to the principles of equity in awarding Wilson a judgment based on unjust enrichment, and (2) was the chancellor's opinion in *Dolphin II* consistent with this Court's mandate in *Dolphin I?*

The answer to both of these questions is "yes."

While the Wilsons did not pray for the relief of unjust enrichment in their original complaint, upon remand to the Chancery Court the Wilsons so amended their pleadings. The Dolphins timely objected to such amendment based on this Court's decision in *Dolphin I.* However, the chancellor, in relying on this Court's decision in *Townsend v. Arkansas Highway Commission*, 317 Ark. 581, 879 S.W.2d 447 (1994) (hereinafter referred to

as *Townsend II*), held that she had authority to allow such amendment.

After the ruling by the chancellor, neither Mrs. Dolphin nor her attorney made any request to the court to submit additional proof, nor even made an additional offer of proof to in any way modify the record made in *Dolphin I*. In *Dolphin I*, all the facts were developed on which the chancellor relied in making her award on remand for unjust enrichment.

The facts as developed in *Dolphin I* reflect that Mrs. Dolphin and her deceased husband were several hundred thousand dollars indebted to the Farmers' Home Administration for agricultural loans. The United States of America filed suit against Beatrice Dolphin, surviving wife of Leroy Dolphin, deceased, in January 1994 and at that time filed a lis pendens on the property which is the subject matter of this litigation.

Mrs. Dolphin was duly served but took no action to defend herself. In fact, the judgment issued by the U. S. District Court, Eastern District of Arkansas, Eastern Division, in regard to this matter in Case No. H-C-94-5, specifically held:

> That said defendant, after having waived service as reflected by the waiver filed herein, has not answered, appeared or otherwise made any defense to the plaintiff's complaint and is wholly in default. . . .

The Court thereafter entered judgment against Beatrice Dolphin:

> in the amount of $136,114.34 and interest in the sum of $135,268.98 accrued to September 29, 1993, and thereafter at the daily rate of $36.2113 to the date of this judgment and there-after at the statutory rate pursuant to 28 U.S.C. § 1961 plus advances and recoverable charges made during the pendency of this action for protection and maintenance of the subject prop-erty, and the costs of this action.

(Tr. 190 of *Dolphin I*.)

Mrs. Dolphin had no hope whatsoever of ever repaying or discharging the judgment. Subsequently, a notice of sale was entered on April 13, 1995, advising that the property would be

sold at the courthouse steps on May 25, 1994, to satisfy the judgment.

Mrs. Dolphin admitted at the trial in *Dolphin I* that she had asked Wilson to take steps on her behalf. The exact nature of these steps, however, was disputed.

However, it is undisputed that Wilson interceded on behalf of Mrs. Dolphin and succeeded in stopping the sale and satisfying the indebtedness (Tr. 60–61).[1]

Plaintiff's Exhibits 5 and 6 show that the judgment was in fact satisfied and the sale was stopped.

The Wilsons paid the money out of their own funds as part of the agreement (Tr. 60–61, 66) but the U.S. demanded that the payment be in the Dolphins' name (Tr. 80, 200).

There is no question that the funds to satisfy the government's claim came from the Wilsons as reflected on the checks which appear as Plaintiff's Exhibit 4 (Tr. 160) and part of Defendant's Exhibit 9 (Tr. d, (1) stopped the sale, and (2) satisfied the indebtedness. (Tr. 161–162)

It is also undisputed that Mrs. Dolphin never did anything once the lawsuit in foreclosure was filed to stop it. She entered her appearance, she did not contest the amount in issue, she did not contest the validity of the United States government's claim. (Tr. 190) While she says she hired an attorney (Tr. 89), there is no evidence the attorney ever did anything but enter her appearance and consent to the judgment.

She further admitted that she took no action whatsoever to stop the sale or foreclosure (Tr. 179–180, 187, 190), she did not care if the foreclosure went through (Tr. 140–141), she was not going to the sale (Tr. 89, 97), she was not going to pay to stop the sale (Tr. 142), she was not going to pay any dollars to stop the sale or to satisfy the judgment (Tr. 88, 94, 113), and she admitted that she would have no interest in the property whatsoever after the sale (Tr. 145).

---

[1] The abbreviation "Tr" is a reference to the transcript pages from *Dolphin I.*

Dolphin further admitted that she had no intention of redeeming the property after the sale (Tr. 98).

It is clear that Mrs. Dolphin did not care and was going to let the property be sold and go wherever it might.

However, based on the actions of Wilson and the expenditure of his own funds, the property was not sold at a foreclosure sale. Even though Mrs. Dolphin claims she did not want Wilson to stop the sale of the property, she admitted she knew of his actions but yet never contacted Wilson, never complained to Wilson of his actions, and she never told the federal government not to accept Wilson's checks on her behalf or to stop the foreclosure sale (Tr. 100, 122, 127, 143).

It is further undisputed that even prior to the foreclosure sale, Mrs. Dolphin did nothing to care for the property. Mrs. Dolphin admits that in 1988 she abandoned the property (Tr. 85, 101), that she had not farmed the property since 1985 (Tr. 107), that the house burned on the property on which her son had been living and that he left in 1990 (Tr. 125), that she never rented the land nor worked the land in any way after her son left (Tr. 124), and that she had not cared for the property in any way since she had left (Tr. 101) and had not seen the property in seven years until the day before the trial of *Dolphin I* (Tr. 101).

Her son, who testified, made similar admissions (Tr. 155).

The record reflects that only Wilson cared for and maintained the property after his conversation with Mrs. Dolphin.

The chancellor's decision in *Dolphin II* that Wilson did not act as a volunteer is certainly supported by a preponderance of the evidence and is consistent with the principles of equity. The chancellor's award to Wilson entitling him to judgment and a lien on the property if not paid in 60 days in the amount of $14,439.40 is supported by the record.

Further, even though chancery cases are tried *de novo* on the record, the Supreme Court does not reverse a finding of fact by the chancellor unless it is clearly erroneous. Ark. R. Civ. P. 52(a);

*Merchant & Planters Bank & Trust Co. v. Massey*, 302 Ark. 421, 790 S.W.2d 889 (1990); and other cases too numerous to cite.

The Chancellor determined that the sole question to be reached in regard to this equitable argument was "whether the defendant would be unjustly enriched if she were not required to repay the funds." (Page 6 of the Chancellor's opinion).

The law on unjust enrichment is relatively clear and is stated as follows:

> The doctrine of unjust enrichment is an equitable one, providing that one party should not be allowed to benefit at the expense of another because of an innocent mistake or intentional error. *Brookfield v. Rock Island Improvement Co.*, 205 Ark. 573, 169 S.W.2d 662 (1943). Here the chancellor correctly determined that, absent restitution being paid to Stoddard, Shannon would without justification reap the benefits of Stoddard's labor and expense. . . . See *Kistler v. Stoddard*, 15 Ark. App. 8, 688 S.W.2d 746 (1985).

Therefore, whether Wilson was mistaken in his directions from Mrs. Dolphin or she intentionally deceived him into making payments with no intention of conveying the land to him, is of no matter in regard to unjust enrichment. The important thing is, would Mrs. Dolphin be unjustly enriched by being allowed to keep the property which she had done nothing to protect from foreclosure and which she had done nothing to care for, for over seven years. The answer to this is a clear and resounding yes.

A similar decision was reached in *Smith v. Whitener*, 42 Ark. App. 225, 856 S.W.2d 328. In *Smith*, the pertinent facts are that Patricia Birlson had owned property in White County which she encumbered with a mortgage in favor of Newport Federal Savings & Loan. In 1980 Birlson sold all the property but one acre to Billy Ray Whitener. In conjunction with the purchase of that property, Whitener assumed the existing mortgage. Birlson later sold the remaining one acre to Charles Burress who then sold the acre to appellant Jimmy Smith. Smith constructed a house on the property and then entered into a contract for its sale with J.J. Reeves. The title search revealed Newport's lien on the property and to facilitate the sale, Smith obtained a release of his one acre

from the mortgage by signing a $5,000 certificate of deposit to Newport Federal Savings & Loan.

It was Smith's understanding that the CD would be returned once the note secured by the mortgage was paid off.

Unfortunately for Smith, the note became delinquent and Newport Federal applied the CD to the indebtedness.

Smith then brought suit against Whitener claiming he was entitled to be repaid his $5,000 CD since it had been applied to Whitener's loan which had been assumed by Whitener when he purchased the property from Birlson.

Whitener contended that he would not be unjustly enriched by his indebtedness being reduced by Smith's $5,000.

The facts, at least in this regard, are very similar to *Dolphin*. Whitener was going to receive the benefit of Smith's money and Dolphin would receive the benefit of Wilson's money without any benefit to the person who had actually paid the money to save the property.

The Chancellor agreed with Whitener and held that Smith had failed to meet his burden of proof and dismissed his case.

On appeal, the Court of Appeals held that Whitener would be unjustly enriched since Whitener's indebtedness was reduced by the application of the proceeds of the funds from the CD which rightfully belonged to Smith. The Court even held this to be the case in spite of the fact that Whitener apparently didn't even know that Smith's money had been applied to reduce his indebtedness, stating:

> If one has money belonging to another, which in equity and good conscience, he ought to retain it, it can be recovered although there is no privity between the parties. *Patton v. Brown Moore Lumber Co.*, 173 Ark. 128, 292 S.W.2d 383 (1927).

> Although the enrichment was to appellee and at the expense of appellant, the enrichment need not have come directly from appellant but could come from a third source, Newport Federal.

The Court went on to state:

> *When one not primarily bound to pay a debt to remove an encumbrance nevertheless does so, either from his legal obligation or to protect his own secondary right, he may assert a claim of unjust enrichment against the other who is liable.* See *Cox v. Wooten Brothers Farms*, 271 Ark. 735, 601 SD.W.2d 278 (Ark. App. 1981) Here appellant was not obligated to appellee to *pay any portion of appellee's mortgage.* . . . (Emphasis added.)

Wilson was obviously not obligated to pay any portion of Dolphin's mortgage, but did so based on their understanding or based on a mistake on his part. Under the doctrine of *Kistler v. Stoddard, supra,* one is entitled to benefits of the doctrine of unjust enrichment if such payment is made based on an innocent mistake. There is no evidence whatsoever that the acts of Wilson were anything other than that.

This brings us to question number two, were the Chancellor's actions inconsistent with the opinion delivered in *Dolphin I*? In order to make that determination, we must look at the mandate and the Court's opinion. As pointed out in Justice Brown's excellent opinion, the mandate governs what actions the lower court may take once a decision is made by a superior court. In this case, the case was remanded, not dismissed.

Three things need to be considered in determining whether or not the Chancellor violated the mandate: (1) the fact that the case was not dismissed but was remanded to the Chancellor; (2) that the quantum of proof required to prove specific performance is clear, cogent and convincing (*see Dolphin I*) and the quantum of proof required to support a claim for unjust enrichment is a mere preponderance of the evidence (*see Kistler v. Stoddard, supra*); and (3) is there anything in the language of *Dolphin I* that would preclude the request for unjust enrichment by the Wilsons upon remand.

The previous decision of this Court merely held that the Chancellor had erred in finding "that there was clear and convincing evidence that an agreement existed between the parties.

> Under these circumstances, we hold that the Wilsons' complaint was barred by the statute of frauds and reverse and remand for an Order consistent with this opinion.

In comparing the chancellor's decision on remand and this Court's opinion and mandate on *Dolphin I*, the following is evident:

1. Unjust enrichment does not require clear and convincing evidence as is required for specific performance;
2. A claim for unjust enrichment is not barred by the statute of frauds;
3. An award for unjust enrichment can be made where the facts would be insufficient to support a claim for specific performance.

Therefore, the Chancellor's Order was not *inconsistent* with this Court's decision in *Dolphin I*.

Therefore, the answer to question No. 2 is yes, the chancellor's decision was consistent with this Court's decision in *Dolphin I*. *Dolphin I* dealt with a different quantum of proof required for specific performance and did not preclude an award for unjust enrichment based on a lower standard of proof, i.e., a mere preponderance of the evidence.

The main issue that troubles this writer is what rights, if any, a party has to amend its pleadings upon remand. Justice Brown aptly cites in his opinion at page 6, *Little Red Levee Dist. No. 2 v. Moore*, 199 Ark. 946, 137 Ark. 106, 241 S.W.2d 234 (1940) and *Felker v. McKee*, 154 Ark. 106, 241 SW. 378 (1922). However, both of these cases predate both our current Rules of Civil and Appellate Procedure. *Felker* even dealt with the sustaining of a demurrer which is no longer even recognized under our rules of civil procedure.

The Court's mandate in *Dolphin I* directed the Chancellor to act consistently with *both* the principles of equity as well as consistent with the mandate. The Chancellor in this writer's opinion has done both and her decision should be affirmed.

The Townsend case may be an anomaly and may be distinguishable. Perhaps it should be limited to its facts or overruled as suggested by Justice Glaze in *Townsend III*, *Townsend v. Arkansas State Highway Commission*, 322 Ark. 122, 907 S.W.2d 726 (1995).

Since the rule in *Townsend II* and *Townsend III* results in uncertainty and lack of finality, the Court may want to cure this problem by overruling *Townsend II* as suggested by Justice Glaze in his dissents in *Townsend II* and *Townsend III*. Until *Townsend II* is overruled or limited to its facts, it would appear the chancellor was correct in relying on *Townsend* in her decision. Further, even without *Townsend* the chancellor's decision was not contrary to this Court's mandate or this Court's decision in *Dolphin II*. In fact, it would appear to the writer that even without *Townsend*, the chancellor's acts were consistent with both the mandate and the principles of equity as ordered by this Court.

THORNTON, J., joins.

Special Associate Justice KENT TESTER joins.