Courtney Hudson Goodson, Justice, dissenting. In the first appeal of this case, a majority of this court erroneously concluded that the evidence was not sufficient to support Thornton’s conviction for capital murder. See Thornton v. State, 2014 Ark, 157, 433 S.W.3d 216 (Goodson, J., dissenting). Today, this court compounds that error by misinterpreting the previous opinion and by misapplying the mandate rule to hold that the circuit court did not have the authority to consider Thornton’s unquestionable guilt of a lesser-included offense. Once again, I must dissent. |islt should be remembered that this, ease involves the untimely death of a young man named Kwarae Turner. The evidence produced at the trial, when appropriately viewed in the light most favorable to the State) shows that Thornton shot Turner in the head with a .45-caliber handgun while Turner was .sitting in a chair inside Thornton’s home, where he lived alone. A neighbor passing by Thornton’s house heard the gunshot. Thornton emerged from his home and told the neighbor that his' gun had discharged when' he dropped it on the floor. However, the bullet that struck Turner entered his head behind and above the left ear and continued in a downward trajectory, at an angle from left to right, where it'exited Turner’s right jaw and then lodged in his right arm. Using Turner’s own vehicle to conceal his misdeed, Thornton dumped Turner’s body in a ditch and left the car in a parking lot. After the authorities devél-oped Thornton as a suspect in Turner’s death, the-police found him hiding in a hotel room registered in another person’s name. He also gave a false name to the police in an effort to avoid arrest. During his incarceration before the trial, Thornton wrote a letter in which' he threatened the lives of witnesses- who' might testify against him. ' Sitting as the trier of fact with all of this evidence before' it, the circuit court found Thornton guilty of capital murder, theft of property, and abuse of a corpse. In the first appeal, Thornton’s sole point for reversal was that' thé evidence was insufficient to support his conviction for capital murder. To my everlasting disbelief, a majority of this court found merit in Thornton’s contention that proof of premeditation and deliberation was lacking. Instead of focusing on whether substantial evidence in the record supported the conviction, the only issue in question, the majority was obsessed with the | ^circuit court’s oral pronouncement of guilt,- even though Thornton did not claim any error flowing from the court’s remarks. Also to Thornton’s good fortune, the majority glossed over the abundant and substantial evidence establishing the element of intent and his consciousness, of guilt: the nature and location of the wound and the type of weapon used; Thornton’s false and improbable statement to explain suspicious circumstances; his attempt to silence witnesses; his giving of a false name and flight to avoid arrest;, and his attempts to cover up his connection to the crime, including the disposal of Turner’s body. In concluding, the opinion, the majority wrote, Accordingly, because the circuit court engaged in speculation and conjecture in determining that Thornton acted with premeditation and deliberation and improperly shifted the -burden of proof when weighing the evidence; we must reverse Thornton’s conviction for capital murder. While the evidence cannot sustain the charge of capital murder» we offer no opinion about whether it would sustain a lesser offense. See, e.g., Acuff v. State, 253 S.W.2d [Ark.] 85, 484 S.W.2d 698 (1972). Reversed and dismissed. Thornton, 2014 Ark. 157, at 14-15, 433 S.W.3d at 224 (Thornton I) (bold type added). The mandate of this court, issued on May 15, 2014, stated as follows: . THIS CRIMINAL APPEAL WAS SUBMITTED TO THE ARKANSAS SUPREME COURT ON THE RECORD OF THE LINCOLN COUNTY CIRCUIT COURT AND BRIEFS OF THE RESPECTIVE PARTIES. AFTER DUE CONSIDERATION, IT IS THE DECISION OF THE COURT THAT THE CONVICTION IS REVERSED AND DISMISSED FOR THE REASONS SET OUT IN THE ATTACHED OPINION. (Bold type added.) Following the issuance of the mandate, the State filed a motion asking the circuit court hfjto consider the lesser-included offenses, as specifically referred to' by this court in the majority opinion. Over Thornton’s objection, the circuit court granted the State’s motion, and based on the record of trial, the court found Thornton guilty of first-degree murder and sentenced him to a term of forty years’ imprisonment. In this second appeal, the majority now holds that (1) the issue whether the evidence would support a finding of guilt on a lesser-included offense was not before this court in the first appeal, and (2) the circuit court did not have jurisdiction to consider lesser-included offenses because this court “reversed and dismissed” in the first appeal. The majority is wrong on both counts. The heart of this matter lies in the proper interpretation of this court’s mandate and opinion in Thornton I. A “mandate” is the official notice of the action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court’s judgment duly recognized, obeyed, and executed. Johnson v. State, 366 Ark. 390, 235 S.W.3d 872 (2006) (.Johnson IV). Under the mandate rule, “an inferior court has no power or authority to deviate from the mandate issued by an appellate court.” Ingle v. Ark. Dep’t of Human Servs., 2014 Ark. 471, at 6, 449 S.W.3d 283, 287 (quoting Dolphin v. Wilson, 335 Ark. 113, 118, 983 S.W.2d 113, 115 (1998)). We have observed that the “lower court is vested with jurisdiction only to the extent conferred by the appellate court’s opinion and mandate.” City of Dover v. Barton, 342 Ark. 521, 525, 29 S.W.3d 698, 700 (2000). Our law requires the circuit court to implement both the letter and spirit of the mandate, taking into account the appellate court’s opinion and the | ^circumstances it embraces. Johnson, supra; Smith v. AJ & K Operating Co., 365 Ark. 229, 227 S.W.3d 899 (2006). This court applied these principles in Johnson TV, supra. There, this court had previously, reversed and remanded for the testing of negroid hairs based on our understanding that the negroid hairs had not been retested. Johnson v. State, 356 Ark. 534, 157 S.W.3d 151 (2004) (Johnson III). Also, according to the opinion in Johnson III, the DNA testing that had been conducted indicated that the probability was 1 in 250 that the DNA from the negroid hairs belonged to an African American other than Johnson. We stated that the “1 in 250 ratio is so broad and includes so many persons other than Mr. Johnson that he is entitled to retesting under Act 1780.” Johnson III, 356 Ark. at 550, 157 S.W.3d at 163-64. On remand, the circuit court did not order retesting of the hairs as this court had directed. Instead, the circuit court entered an order finding that the State had complied with this court’s requirement that the hairs be retested, observing that the hairs had actually been retested in preparation for a second trial in 1997 and that this test had revealed, a statistical frequency of 1 in 720 million that the hairs belonged to someone other than Johnson in the African American population. On appeal from that-decision in Johnson TV, Johnson argued that the circuit court had defied our mandate by failing to have the hairs retested. This court disagreed, noting that the circuit court did not reopen the case or consider any issues other than the retesting of the negroid hairs. In so holding, we reasoned that the point of error in the Johnson III opinion concerned the troubling 1 in 250 probability, and we concluded that the circuit court had 117correctly found that the hairs had been retested after that point of error to reflect a probability of 1 in 720 million. Accordingly, this court held that the circuit court had complied with the letter and spirit of our mandate in Johnson III, and we stated that retesting was no longer necessary. Our decision in Arkansas State Highway Commission v. Townsend, 317 Ark. 581, 879 S.W.2d 447 (1994) (Townsend II), is also instructive. In that case, we had agreed with the Highway Commission’s argument in a prior appeal that the chancellor had erred by not granting its request for an injunction to compel the removal of structures from its right-of-way. Ark. State Highway Comm’n v. Townsend, 313 Ark. 702, 858 S.W.2d 66 (1993) (Townsend I). With that holding, this court reversed and “dismissed” the original case. Id. at 706, 858 S.W.2d at 69. After the decision in Townsend I, the Highway Commission filed a petition in the same proceeding asking the chancellor to enforce this court’s opinion and mandate and to require the removal of the structures. The chancellor declined that request, accepting Townsend’s argument that she lacked jurisdiction to entertain the Highway Department’s petition once this court had “dismissed” the action on appeal. The Highway Commission appealed the chancellor’s dismissal of its petition'to enforce our mandate and opinion. In Townsend II, this court construed the mandate along with the opinion in Townsend I, wherein we had found error in the chancellor’s refusal to grant an injunction. In reading the two together, we rejected Townsend’s argument that the'chancellor was powerless to enforce our holding with regard to the blockage of the right-of-way. We also found no merit in Townsend’s contention that our use of the phrase “reversed and dismissed” | ^trumped the holding of the opinion so as to deprive the chancery court of jurisdiction. This court said, Granted, our signals to the trial court were not crystal clear in Townsend I as we reversed and dismissed the decree of the court when we should have reversed and remanded the matter. However, the body of the opinion was quite clear in its intended result, despite our stated disposition. Townsend II, 317 Ark. at 585, 879 S.W.2d at 449. In the case at bar, the previous opinion recites that “we must reverse Thornton’s conviction for capital murder.” Thornton, 2014 Ark. 157, at 14-15, 433 S.W.3d at 224. It concludes with the language “reversed and dismissed.” Id. The mandate also states that this court reversed and dismissed “the conviction” and that we did so “for the reasons set out in the attached opinion.” In the opinion, this court determined, that the evidence was not sufficient to support the conviction for capital murder. Accordingly, a plain reading of the opinion and the mandate reveals that this court reversed and dismissed only Thornton’s conviction for capital murder. The majority in the present appeal correctly notes that it can be appropriate to reverse and dismiss when the evidence is insufficient to sustain the finding of guilt. See Harris v. State, 284 Ark. 247, 681 S.W.2d 334 (1984) (reversing and dismissing where the evidence of the defendants’ connection with the drug-manufacturing operation was insufficient to .support their convictions for manufacturing a controlled substance). However, that is not all that this court said'in Thornton I. The final sentence of text states that “[wjhile the evidence cannot sustain the charge of capital murder, we offer no opinion about whether it would sustain a lesser offense. See, e.g., Acuff v. State, 253 Ark. 85, 484 S.W.2d 698 (1972).” , Thornton I, 2014 Ark. 157, at 15, 433 S.W.3d at 224. In Acuff, although completely ignored by the majority here, this court' held that the evidence did not support Acuffs conviction for assault with intent to kill. We said, however, “this is not to say that it would not sustain a lesser offense.” Accordingly, this court in Acuff reversed and remanded for that determination to be made. The disposition in Acuff was eminently correct. When the error has no bearing on the issue of guilt versus innocence, remanding for the consideration of lesser-included offenses, as we did in Acuff, is entirely consistent with our well-established caselaw. We have long held that when the evidence is insufficient to convict for a certain crime, but there is sufficient evidence to convict for a lesser-included offense of that crime, this court may, depending on the facts,' “reduce the punishment to the maximum for the lesser offense, reduce it to the minimum for the lesser offense, fix it ourselves at some intermediate point, remand the’case to the trial court for the assessment of the penalty, or grant a new trial either absolutely or conditionally.” Dixon v. State, 260 Ark. 857, 862, 545 S.W.2d 606, 610 (1977) (quoting Clark v. State, 246 Ark. 876, 880, 440 S.W.2d 205, 207 (1969)); see also Tigue v. State, 319 Ark. 147, 889 S.W.2d 760 (1994); Davidson v. State, 305 Ark. 592, 810 S.W.2d 327 (1991); Trotter v. State, 290 Ark. 269, 719 S.W.2d 268 (1986). Regrettably, the majority opinion 'in Thornton I is no model of clarity. That being so, this is an occasion where this court must look beyond mere words to interpret the import of the mandate and the opinion in the prior appeal, as “it is not the form of the order on the first appeal that controls, but the substance of that order.” Glover v. Woodhaven Homes, Inc., 346 Ark. 897, 400, 57 S.W.3d 211, 215 (2001) (quoting Snapp v. State Farm Fire & Cos. Co., 60 Cal.2d 816, 36 Cal.Rptr. 612, 388 P.2d 884, 887 (1964)); see also Johnson v. Cincinnati Ins. Co., 375 Ark. 164, 289 S.W.3d 407 (2008). The point of error in Thornton I was this court’s conclusion that the evidence of premeditation and deliberation was insufficient. Consequently, this court reversed and dismissed the conviction for capital murder. Because the court’s determination had nothing to do with guilt or innocence, this court, based on the facts of the case, exercised the option to express no opinion on Thornton’s guilt of the lesser-included offenses. However, it is evident by that statement and the citation to the decision in Acuff that this court left open the question of Thornton’s guilt on lesser-included offenses. The majority in this case is simply incorrect by stating that the issue, of lesser-included .offenses was. not before the court- The reference to the decision in Acuff cannot be dismissed as mere surplusage, and the question of lesser-included offenses became relevant and was indeed before the court once it had determined that the. evidence did not sustain the greater offense. Dixon, supra. Because the point of error in Thornton I concerned the conviction for capital murder, and because the opinion pointedly left open and did not foreclose consideration of the lesser-included offenses, I cannot con-, elude that the circuit court was deprived of jurisdiction and that'it did not have the authority .to consider Thornton’s guilt on any of .the lesser-included offenses. Consistent with the opinion, the circuit court did not reopen the case to examine’any issues other than the lesser-included offenses. The stated disposition in Thornton I cannot be viewed, in isolation. -On: the-contrary, our caselaw.establishes that we-must examine the entire opinion, including our citation to Acuff and the acknowledgment of lesser-included offenses. In my view, the circuit court - complied with the letter and spirit of our opinion and mandate in 181 Thornton I. Therefore, I would not reverse the circuit court on this basis. Moreover, this court’s per curiam denying Thornton’s petition for writ of mandamus is supportive of my view. Thornton v. Jones, 2015 Ark. 109, 2015 WL 1198668 (per curiam). There, Thornton sought the writ to require the circuit court to enter an amended judgment to reflect the dismissal of the capital-murder conviction. In denying the petition, we said As the respondent points out, our decision reversed and dismissed petitioner’s conviction for capital murder; there was no remand requiring any action by the trial court. Because the trial court was not directed to enter an amended judgment, petitioner has not established that Judge Jones was obligated to enter an amended judgment or that he has failed to perform a duty imposed by this court. Id. at 2. Significantly, this court did not hold that the circuit court lacked jurisdiction to enter an amended judgment based on the disposition in Thornton I. Instead, we merely stated that the prior decision did not direct the circuit court to take any aetion. Clearly, this court did not say that the previous decision prohibited the circuit court from acting. Consequently, the per curiam does not require this court to now hold that the circuit court lacked jurisdiction to consider lesser-included offenses. In a nutshell, the circuit court did not violate the mandate rule by taking up the lesser-included offenses and by finding Thornton guilty of first-degree murder. Accordingly, I dissent.